UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

BELL ATLANTIC MOBILE SYSTEMS LLC
 d/b/a VERIZON WIRELESS

**COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF
AND EXPEDITED
REVIEW PURSUANT TO
47 U.S.C. § 332(c)(7)(B)(v)**

Civil Action No.:

 1:21−cv−00774 (TJM/ATB)

                                   Plaintiffs,

        vs.

CITY OF HUDSON, NEW YORK, THE
PLANNING BOARD OF THE CITY OF HUDSON,
NEW YORK, THE CODE ENFORCEMENT
DEPARTMENT OF THE CITY OF HUDSON; CRAIG
HAIGH, In his Official Capacity as Code Enforcement
Officer for THE CITY OF HUDSON, NEW YORK

                                   Defendants,

        and

PROVIDENCE HALL ASSOCIATES, L.P.

                                   Additional Defendant.

_____

### PRELIMINARY STATEMENT

Plaintiff BELL ATLANTIC MOBILE SYSTEMS LLC d/b/a VERIZON WIRELESS ("Verizon Wireless" or "Plaintiff"), by and through its undersigned attorneys, alleges as follows as and for Verizon Wireless' Complaint and Request for Expedited Review under 47 USC § 332(c)(7)(B)(v), relative to Defendant City of Hudson, New York's ("City") unlawful failure and refusal to act on the application by Plaintiff, a federally-licensed wireless telecommunications service provider, for permission to construct and operate a collocated personal wireless service

1

facility on an existing building located in the City of Hudson, and for declaratory and related injunctive relief ordering the immediate issuance of all building permits and/or other approvals necessary for the placement and construction of the Verizon Wireless' proposed personal wireless service facility.

## I. INTRODUCTION

1.      The Nation's wireless infrastructure is a critical communications pathway that is extensively employed and heavily relied on by the public, — including residents and businesses, the traveling public, emergency service providers, hospitals and health care professionals, law enforcement personnel, government officials, and the 911 North American emergency system. Congress and the Federal Communications Commission ("FCC") have emphasized the importance of a seamless nationwide wireless network, and the need to allow wireless carriers to fill gaps in their coverage without undue delay caused by municipal planning and zoning boards.  This case involves Plaintiff's attempt to close just such a coverage gap and to resolve system capacity issues with the Verizon Wireless network in and around the City of Hudson, and the City's attempts to thwart that effort.

2.      The critical importance of wireless communications systems is recognized, encouraged, and implemented by, among other laws, rules and regulations, the Federal Communications Act of 1934, as amended by the Telecommunications Act of 1996, now codified in 47 U.S.C §151 et seq. (hereinafter, the "Act" or the "TCA"), and in Federal Communications Commission ("FCC") orders, rules, and regulations, including, without limitation, the FCC Order issued in the proceeding titled *In re Petition for Declaratory Ruling to Clarify Provisions of Section 332(c)(7)(B)*, 24 F.C.C.R. 13994 (2009) (the "2009 FCC Order") and in *Matter of Acceleration of Broadband Deployment by Improving Wireless Facilities Siting Policies*, 29 F.C.C.R. 12865

(2014) (the "2014 FCC Order"), and in *Matter of Accelerating Wireless Broadband by Removing Barriers to Infrastructure Investment*, 34 F.C.C.R. 2282 (2018) (the "2018 FCC Order"). Overall, these laws, rules, and regulations establish a "pro-competitive, de-regulatory national policy framework designed to accelerate rapidly private sector deployment of advanced telecommunications and information technologies and services to all Americans…." *See* Act, S. Rep. 104-230, at 1 (Feb. 1, 1996) (Conf. Report).

3.     The Executive Branch also recognizes wireless infrastructure as "an essential element of a resilient and secure nation." Presidential Proclamation No. 8460, 74 Fed. Reg. 234 (Dec. 8, 2009).

4.     To foster a pro-competitive, deregulatory national wireless policy, Congress included provisions in the Act that expressly limit and preempt local zoning authority to the extent it unreasonably delays or prohibits wireless carriers such as Plaintiff to quickly fill "gaps" in their wireless service coverage and address system capacity issues. Section 332(c)(7) of the Act thus attempts to strike a balance between "preserv[ing] the traditional authority of state and local governments to regulate the location, construction, and modification of wireless communications facilities like cell phone towers" (*T-Mobile S., LLC v. Township of Roswell*, 574 U.S. 293, 300 (2015)) and "reduc[ing] . . . the impediments imposed by local governments upon the installation of facilities for wireless communications." *Township of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 115 (2005).

5.     Recognizing that "personal wireless service providers have often faced lengthy and unreasonable delays in the consideration of their facility siting applications, and that the persistence of such delays is impeding the deployment of advanced and emergency services," and to facilitate timely and smooth implementation of these essential services, the FCC, pursuant to its authority under the TCA, established a presumptive 90 day period in which municipal and/or other

governmental approving entities or agencies must process and act upon wireless telecommunications applications involving collocations on existing towers or structures (the "Shot Clock Period"). *See* 2009 FCC Order at ¶ 32.

6.      In this case, the City of Hudson, New York ("City" or "Hudson"), its boards, officers, agencies, and departments have repeatedly and unreasonably refused and delayed to act upon Plaintiff's application to construct and operate a wireless telecommunications facility in the City of Hudson within the Shot Clock Period, thereby effectively prohibiting Verizon Wireless from providing service where a gap in service and capacity deficiencies indisputably exist. The City has done so in knowing disregard for, and in violation of, the Act and other provisions of federal, state and local laws rules and regulations.

7.      The City Planning Board's failure to act on the Application within the Shot Clock Period in this case is in clear violation of the TCA and FCC Orders. Because Verizon Wireless has met, indeed, often exceeded, all applicable requirements for zoning approval under applicable Federal, State and Local law, as demonstrated on the record before Defendants, an injunction should issue ordering the Defendants to forthwith approve all necessary authorizations required to construct the Facility, including but not limited to, the Application as originally filed with Defendant Planning Board, and further ordering the City Code Enforcement Officer to issue a building permit for the Facility forthwith.

8.      Defendants' failure and refusal to act on the Application before expiration of the Shot Clock Period violates the TCA because it constitutes an effective prohibition on wireless service thereunder in that it denies Verizon Wireless's ability to close a significant gap in coverage and cure capacity deficiencies in the local wireless network using the least intrusive means possible, *i.e.*, collocation on an existing building, exactly as the City Code requires. The City's

effective prohibition on wireless service thus constitutes a separate and independent violation of federal law warranting injunctive relief. *See* 47 U.S.C. § 332(c)(7)(B)(i)(II).

9.      When Defendant Planning Board finally acted on the Application on June 23, 2021, after expiration of the Shot Clock Period, it imposed unreasonable, unenforceable and arbitrary and capricious conditions, which are not supported by substantial evidence, that effectively prohibit construction of the Facility and thus deny Verizon Wireless' service to any area demonstrated to be in need of such service. For example, Defendant Planning Board's condition which attempts to require the owner of the Property to execute a "deed restriction" against the underlying property prohibiting future development of personal wireless service facilities was imposed to address perceived health impacts alleged by certain members of the general public and is, therefore, an express violation of section 332(c)(7)(B)(iv) of the TCA. Defendant Planning Board's condition purporting to limit the frequencies which Verizon Wireless can operate is a clear usurpation of the FCC's exclusive jurisdiction to regulate personal wireless service facilities and the radio frequencies associated therewith and is a violation of the Supremacy Clause of the United States Constitution.

10.     Defendant Planning Board's deed restriction condition represents an unlawful taking of property without just compensation under the Fifth Amendment of the United States Constitution. The unlawful deed restriction condition serves to unreasonably deprive the owner of the Property certain rights to use the Property in a manner consistent with the current zoning law.

11.     The escrow required to be paid to Defendant Planning Board pursuant to §284-16 of the City Code was excessive and not reasonably related to any impact, cost, or other legitimate expense the City may have incurred in connection with the Application. Had the Planning Board reasonably applied the local wireless communications regulations set forth in Chapter 284 of the

City Code, there would not have been a need to conduct a lengthy (and unauthorized) public hearing and the escrow amount demanded by Defendant Planning Board would have been significantly less.

12.     The injury caused by Defendants' unlawful failure and refusal to act within the Shot Clock Period is both continuing and irreparable. The harm to Verizon Wireless and its customers, including the potential loss of goodwill caused by deficient wireless coverage in the City, can neither be quantified nor remedied by monetary damages.  Defendants lack any legitimate governmental interest to burden the Application with unreasonable and unachievable conditions under the guise of approval.  The underlying public interest here, expressed in the policies embodied in Section 332 of the TCA and the FCC Orders, is intended to deny local governments the power to unreasonably delay or block essential wireless telecommunications facilities, particularly through calculated inaction and/or unreasonable conditioning, as the City has done here.

13.     The harm caused by Defendants' failure to act within the Shot Clock Period is not cured by Defendant Planning Board's adoption of its Resolution on June 23, 2021, subsequent to the expiration of the Shot Clock Period. That decision is not only fatally late, but it contains unreasonable and unlawful conditions, the predictable and intended result of which is to effectively prohibit the Facility in violation of section 332(c)(7)(B)(i)(II) of the TCA.

14.     Even if Defendant Planning Board's Resolution was to be given effect, said Resolution contains conditions that: (i) have no reasonable nexus to the proposed Special Use Permit; (ii) violate the existing City of Hudson Code; (iii) exceed the Defendant Planning Board's lawful jurisdiction; and (iv) are improperly based on perceived health impacts – which is an express violation of the TCA, all of which resulted in an effective denial of the Application.

6

15.     The City's continued failure to issue "all necessary authorizations" required to permit the deployment of Verizon Wireless' proposed Facility, including a building permit, represents a continuing violation of the Shot Clock Period according to paragraph 128 of the 2018 FCC Order.

16.     Under Section 332(c)(7)(B) of the Act, Verizon Wireless is entitled to injunctive and declaratory relief under the Act permitting it to install and operate the Personal Wireless Service Facility described in the Application.

## II.  JURISDICTION AND VENUE

17.     This Court has subject-matter jurisdiction over this action under 28 U.S.C. §1331 because it arises under and is brought pursuant to the Federal Communications Act of 1934, as amended by the Telecommunications Act of 1996 (the "TCA"), including 47 U.S.C. §332(c)(7)(B). This Court also has jurisdiction over this action under 28 U.S.C. §1337(a), because the Federal Communications Act and the TCA are acts of Congress regulating commerce.

18.     Pursuant to 28 U.S.C. §1367, this Court may exercise supplemental jurisdiction over Plaintiff's claims under New York State law.

19.     This Court has jurisdiction to order declaratory and injunctive relief under 28 U.S.C. §§2201 and 2202. There is a live and justiciable controversy between the parties that includes whether Defendants have unreasonably failed and refused to act on Verizon Wireless's Application.

20.     Venue is proper in this district under 28 U.S.C. §1391(b)(2).  The Defendants are located in the Northern District of New York, a substantial part of the events or omissions giving rise to the claim occurred in this District, and the property that is the subject of this action is situated in this District.

### III.  EXPEDITED PROCEEDING

21.      Pursuant to 47 U.S.C. §332(c)(7)(B)(v) of the TCA, Verizon Wireless respectfully request expedited treatment of this Complaint.

### IV.  PARTIES

22.      Plaintiff Bell Atlantic Mobile Systems LLC d/b/a Verizon Wireless, is a Delaware limited liability company with a place of business located at 1275 John Street, Suite 100, West Henrietta, New York 14586.

23.      Plaintiff is licensed by the FCC to provide wireless services throughout New York State, including commercial mobile services and personal wireless services (as those terms are defined under federal law) in and around the City of Hudson, New York.

24.      Defendant City of Hudson is, upon information and belief, a municipal corporation of the State of New York, with its principal offices located at 520 Warren Street, City of Hudson, Columbia County, New York 12534.

25.      Defendant Planning Board of the City of Hudson ("Planning Board") is the administrative board and agency of the City which has been delegated authority and jurisdiction to issue special use permits and site plan approval under the City Code and is the City agency which reviewed the Application.

26.      Defendant City of Hudson Code Enforcement Department ("Code Enforcement Department") is the administrative department of the City of Hudson which has been delegated authority and jurisdiction to issue building permits under Article VII, Chapter 325 of the City Code. Defendant Craig Haigh, sued in his Official Capacity, is the City Code Enforcement Officer for the City of Hudson.

27.     Providence Hall Associates, L.P., upon information and belief, is the fee title owner of the property located at 119 Columbia Street, City of Hudson, Columbia County, State of New York.  Verizon Wireless does not seek any relief against Providence Hall Associates, L.P.

## V.  REGULATORY BACKGROUND

### A.  *The Wireless Industry*

28.     The wireless industry continues to experience substantial growth nationally, and within the State of New York. National data indicates that as of 2020, there were approximately 442.5 million subscriber connections active in the United States.

29.     Data from the Centers for Disease Control and Prevention indicates that as of June 2018 (a) approximately fifty-five percent (55%) of all adults and children live in households that have replaced landline service with only wireless service, and (b) forty-two percent (42%) of American homes receive all or almost all calls on wireless devices despite also having landline service.  This trend, sometimes referred to as "cutting the cord," is increasing and, as a result, wireless networks must now handle communications from multiple wireless devices owned by multiple members of a household (that previously were addressed by a single household connection to the landline system).

30.     The FCC reports that the number of 911 calls from mobile phones has significantly increased in recent years with an estimated eighty percent (80%) of all 911 calls now being made from mobile devices. That percentage is continuing to grow.

31.     Viewed from the standpoint of public safety, advances in wireless technology have spurred federal government plans to upgrade the nationwide 911 emergency call system to enable the acceptance of all manner of wireless communication over wireless networks, including text messages, photos and video. The FCC is also engaged in efforts to make modern wireless and

9

broadband devices accessible for emergency and non-emergency use to persons with disabilities. For these new services to function properly, adequate wireless network capacity and bandwidth are critical, but in some areas do not currently exist.

32.     In this context, wireless telecommunications of all forms are vital to the public welfare, safety and convenience and are not a mere luxury or entertainment item.

### B.  Federal Preemption of Local Roadblocks to Competition

33.     By enacting the TCA, Congress created a new telecommunications regulatory regime intended to foster competition in local telephone markets. An explicit goal of the TCA is thus to promote competition and reduce regulation of wireless service providers for the purpose of securing lower prices and higher quality services for consumers and encouraging the rapid deployment of new telecommunications technologies.

34.     To ensure that local governments could not thwart the TCA's pro-competitive national policy, Congress included provisions that encourage build-out of networks and competition among wireless providers by placing certain restrictions on the regulation and placement of personal wireless service facilities by state and local zoning and/or other authorities.

35.     One of the key purposes of the TCA's restrictions on the regulation of personal wireless service facilities is "to stop local authorities from keeping wireless providers tied up in the hearing process through invocation of state procedures, moratoria, or gimmicks." *See Masterpage Comms., Inc. v. Town of Olive*, 418 F.Supp.2d 66, 77-80 (N.D.N.Y. 2005).

### C.  Relevant TCA Provisions

36.     Section 332(c)(7) of the TCA imposes a number of procedural and substantive limitations on local zoning decisions to ensure that local governments do not frustrate the TCA's

goals of promoting competition, higher quality services and the rapid deployment of new telecommunications technologies.

37.     Section 332(c)(7)(B)(i) states:

"The regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof –

(I)     shall not unreasonably discriminate among providers of functionally equivalent services; and

(II)     shall not prohibit or have the effect of prohibiting the provision of personal wireless services."

38.     An effective prohibition of personal wireless services occurs when an applicant is prevented from deploying a personal wireless service facility even though it demonstrates that a significant gap in service exists, and the proposed facility represents the least intrusive means to close such service gap.

39.     Section 332(c)(7)(B)(ii) states:

"A State of local government or instrumentality thereof shall act on any request to place, construct, or modify personal wireless service facilities within a reasonable  period of time after the request is duly filed with such government or instrumentality, taking into account the nature and scope of such request."

40.     Section 332(c)(B)(iii) states:

"Any decision by a State or local government or instrumentality to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in the written record."

41.     Section 332(c)(7)(B)(iv) states:

"No State or local government or instrumentality thereof may regulate the placement, construction, and modification of personal wireless service facilities on the basis of the environmental effects

of radio frequency emissions to the extent that such facilities comply with the Commission's regulations concerning such emissions."

42.    Section 332(c)(7)(B)(v) states:

"Any person adversely affected by any final decision or failure to act by a State or local government or any instrumentality thereof that is inconsistent with this subparagraph may, within 30 days after such action or failure to act, commence an action in any court of competent jurisdiction.  The court shall hear and decide such action on an expedited basis…."

(Emphasis provided).

43.    As the federal administrative agency charged with implementing the TCA, the FCC has the authority to interpret the statute's provisions and to clarify any ambiguities in the statutory language: "ambiguities in statutes within an agency's jurisdiction to administer are delegations of authority to the agency to fill the statutory gap in a reasonable fashion." *NCTA v. Brand X Internet Servs.*, 545 U.S. 967, 980 (2005).

44.    The FCC is an independent agency of the United States government which maintains exclusive jurisdiction over, *inter alia*, the field of radio frequency use.

45.    Pursuant to this authority, on November 18, 2009, the FCC adopted the 2009 FCC Order. The 2009 FCC Order was specifically issued to establish what constitutes a "reasonable period of time" under the TCA for a municipality to act on an application for a wireless communications facility or site.

46.    Having concluded that wireless service providers often face lengthy and unreasonable delays in the processing of their siting applications, and that "the persistence of such delays is impeding the deployment of advanced and emergency services," 2009 FCC Order at ¶ 32, the FCC clarified the need for federal limitations on the ability of local governments to delay

12

decisions like the one at issue. In so doing, the FCC sought to promote the deployment of broadband and other critical wireless services. The 2009 FCC Order held:

> "[I]t is in the public interest to define the time period after which an aggrieved party can seek judicial redress for a State or local government's inaction on a personal wireless facility siting application. Specifically, we find that 'a reasonable period of time' is presumptively, 90 days to process personal wireless service facility siting applications requesting collocations, and, also presumptively, 150 days to process all other applications."

2009 FCC Order at ¶ 32.

47.     The FCC noted that the purpose of this "shot clock deadline" was to give State or local governments or instrumentalities thereof, "a strong incentive to resolve each application within the timeframe defined as reasonable, or they will risk issuance of an injunction granting the application. In addition, specific timeframes for State and local government deliberations will allow wireless providers to better plan and allocate resources. This is especially important as providers plan to deploy their new broadband networks." *Id.* at p. 14,000, ¶38.

48.     The 2009 FCC Order further declares that, when a State and local government does not act within the 90-day Shot Clock Period, then "a failure to act occurs within Section 332(c)(7)(B)(v)" of the TCA and wireless service providers may seek judicial redress within 30 days thereafter. 2009 FCC Order at ¶¶ 32, 37.

49.     The 2009 FCC Order codified that:

> "*Timely action required.* A siting authority that fails to act on a siting application on or before the shot clock date for the application, as defined in paragraph (e) of this section, is presumed not to have acted within a reasonable period of time."

47 C.F.R. § 1.6003(a).

50.     The 2009 FCC Order defined "collocation" to include applications that do not involve a "substantial increase in the size of a tower" as such is defined in the National Programmatic Agreement for Collocation of Wireless Antennas. 2009 FCC Order, ¶46.

51.     The Second Amendment to the Nationwide Programmatic Agreement for the Collocation of Wireless Antennas, effective August 20, 2020, published at 85 F.R. 51357, amended the definition of collocation to mean:

> "the mounting or installation of an antenna on an existing tower, building or structure for the purpose of transmitting and/or receiving radio frequency signals for communications purposes, whether or not there is an existing antenna on the structure."

52.     The facility proposed in the Application constitutes a "collocation" as that term is currently defined by the FCC. Therefore, the ninety (90) day shot clock period applies to the Application.

53.     The presumptively "reasonable period of time" runs from when an application is first submitted or proffered to the municipality. 47 C.F.R. § 1.6003(e).

54.     Under the FCC's Rules and Regulations, a determination of incompleteness of a siting application tolls the shot clock *only* if the State or local government or instrumentality thereof provides notice to the applicant in writing within 30 days of the submission of the application, specifically identifying all missing information, and specifying any code provision, ordinance, application instruction, or otherwise publicly-stated procedures that require the information to be submitted. 47 C.F.R § 1.6003(d)(1).

55.     The "reasonable period of time" within which a local municipality must act under Section 332(c)(7)(B)(ii) of the TCA applies to "all authorizations necessary for the deployment of personal wireless infrastructure" ***including building permits***. 2018 FCC Order @ ¶ 129; *Upstate Cellular Network v. Auburn*, 257 F.Supp.3d 376 (N.D.N.Y. 2017).

56.     The Application here (defined below) was submitted on August 20, 2020. During Defendant Planning Board's review, Verizon Wireless consented to no less than **four (4)** extensions, or tolls, of the applicable 90-day Shot Clock Period, extending the date for a determination by the City from November 18, 2020 until June 8, 2021. The City, therefore, had the Application pending before it for approximately ten (10) months, or nearly 300 days. As of June 8, 2021, the date the Shot Clock Period expired, the Application had not been acted upon by the City.

57.     Pursuant to 47 U.S.C. § 332(c)(7)(B)(v), the 2009 FCC Order, the 2014 FCC Order, and the 2018 FCC Order, the presumption that Defendants have unreasonably delayed action on the Application adheres and Defendants have thus "failed to act" on the Application within the meaning of the TCA's shot clock provisions.

58.     As of the date of this Complaint, Defendant City continues to be in violation of the Shot Clock Period for, among other things, failure to issue a building permit for the Facility.

59.     Defendants' "failure to act" here was knowing and intentional and in clear violation of the TCA and Federal law.

60.     This action is ripe for determination under the TCA, the 2009 FCC Order, the 2014 FCC Order, and the 2018 FCC Order and is timely filed within 30 days of Defendants' failure to act, as required by the TCA, the 2009 FCC Order, the 2014 FCC Order, and the 2018 FCC Order.

### D. State and Local Government Zoning Requirements

#### (i) Verizon Wireless is a Public Utility for Purposes of Zoning

61.     Because of the essential nature of its services, Verizon Wireless has long been considered a public utility for purposes of zoning under New York decisional law.

62.     As a public utility, Verizon Wireless is entitled to a have its land use application reviewed under the deferential public utility variance standard applicable to all public utilities. Under that standard, to obtain the zoning approvals Verizon Wireless need only show (1) need for wireless service (i.e., a gap in coverage or capacity deficiency); (2) that the proposed location remedies the need; and (3) that the proposed location is more feasible than alternatives. *Cellular Tel. Co. v. Rosenberg*, 82 N.Y.2d 364, 372 (1993) (citation omitted).

#### (ii) The City Code Requires Verizon Wireless to Collocate at the Property

63.     Applications for personal wireless service facilities in the City of Hudson, New York are purportedly regulated under Chapter 284of the City Code.

64.     In enacting Chapter 284 of the City Code, the City of Hudson Board of Trustees recognized the importance of requiring collocation of personal wireless service facilities on existing towers and structures such as tall buildings. City Code, §284-5(D).

65.     The City Code includes a hierarchy of preferred siting locations for such facilities. The two (2) highest siting priorities listed in §284-9(A) of the City Code are:

> "(1) On existing towers or other structures on City-owned properties;
> (2) On existing towers or other structures on other property in the City."

66.     It is not disputed that the Property falls within §284-9(A)(2) and represents the highest <u>available</u> priority location due to the fact that no properties in the top priority were available or appropriate.

16

67.     Applicants for personal wireless service facilities may not bypass sites of high priority in favor of a lower priority site unless the applicant can be demonstrated that use of a higher priority would create a hardship on the applicant.

68.     Even though Applicants clearly demonstrated that the Application was fully compliant with the siting hierarchy set forth in section 284-9 of the City Code, Defendant Planning Board spent an excessive amount of time and effort examining sites of lower priority (sites that would require to construction of new towers compared to the proposed collocation and sites that could not be approved under the existing siting hierarchy) to attempt to placate a small group of neighbors who oppose the Facility mainly due to the unsubstantiated belief that the Facility will result in adverse health impacts.

69.     Although the City Code contains requirements for public hearings for certain personal wireless service facilities, section 284-17(B) provides that "[t]here shall be no public hearing required for an application to collocate on an existing tower or other structure…as long as there is no proposed increase in height of the tower or structure, including attachments thereto." (Emphasis provided).

70.     The original plans in the Application conclusively established that no portion of the Facility was proposed to increase the maximum height of the existing building and, therefore, a public hearing on the Application was not required under the City Code. Nevertheless, Defendant Planning Board ignored the requirements of section 284-17(B) and held an extensive public hearing on the Application that took place on no less than eight (8) separate dates between October 2020 and June 2021.

71.     Instead of moving expeditiously towards a final determination on the Application and following the requirements of Chapter 284 of the City Code, Defendants have unlawfully

delayed and prohibited service, and in doing so have ignored Federal, State and Local laws, rules and regulations. By, *inter alia*, refusing to render a decision on the Application within the established Shot Clock Period.

### (iii) The New York General City Law Prohibits Unreasonable Special Use Permit Conditions

72.    Local municipal planning boards are creations of the State of New York and their powers are limited to the specific enabling legislation that establishes the existence of such boards.

73.    New York State General City Law ("GCL") empowers the legislative body of a city to authorize a planning board to grant special use permits.

74.    Defendant Planning Board is the quasi-judicial municipal board which has been granted jurisdiction to approve special use permits for wireless communications facilities. City Code, §284-8(A).

75.    GCL section 27-b(4) authorizes municipal boards with jurisdiction to grant special use permits the authority to impose reasonable conditions and restrictions on such permits as long as the conditions are <u>directly related</u> and incidental to the <u>proposed special use permit</u> and the <u>specific use proposed</u>.

76.    The June 23, 2021 Resolution ("Resolution") adopted by Defendant Planning Board includes certain conditions that are neither reasonable nor directly related to the proposed use and are clearly related to unsubstantiated perceived health concerns that were discussed at length by members of Defendant Planning Board and the public during the extensive public hearing process, despite Federal law which renders such consideration unlawful. A true and complete copy of Defendant Planning Board's June 23, 2021 Resolution is annexed hereto as **Exhibit 1**.

18

77.     One such condition purports to require Verizon Wireless's landlord to record a deed restriction against the Property, promising never to permit a second, or even expanded, personal wireless service facility on the same structure for a minimum of twenty (20) years. The landlord refuses to so burden the Property.

78.     The Resolution includes other conditions that unlawfully: (i) attempt to regulate a field that is clearly pre-empted by the FCC (i.e. use of existing airways for wireless communications), and (ii) require additional information that is expressly inconsistent with the City Code.

### VI.     HISTORY OF APPLICATION TO CONSTRUCT A WIRELESS COMMUNICATIONS FACILITY

#### A.  *Verizon Wireless' Special Use Permit Application*

79.     Verizon Wireless submitted its Special Use Permit and Site Plan Review application ("Application") to the City on August 20, 2020, via electronic mail to Craig Haigh, City of Hudson Code Enforcement Officer, ten (10) copies of which were subsequently delivered to the City on September 1, 2020.  A true and correct copy of the Application is annexed hereto as **Exhibit 2**.

80.     The Application sought authorization to place and construct a personal wireless service facility on the roof of the existing building located at 119 Columbia Street, City of Hudson, County of Greene, State of New York ("Property").

81.     The proposed personal wireless service facility described in the Application includes the installation and operation of six communications antennae (two antennae per sector), a non-penetrating roof mounted equipment platform approximately 9.4' by 11' in size and related communications equipment, utilities and appurtenances (collectively, the "Personal Wireless

Service Facility" or "Facility"). The Application is considered a collocation as defined by the City Code and the FCC.

82.     Because the Personal Wireless Service Facility involves a collocation on an existing building, it is subject to the ninety (90) day Shot Clock Period. 47 C.F.R. §1.6003I(1)(ii). Paragraph 136 of the 2018 FCC Order confirms that for purposes of the Section 332 shot clocks, any attachment to existing structures is deemed a collocation to which the ninety (90) day shot clock applies, regardless of whether the property has previously been used for wireless purposes.

83.     In support of the Application, and in accord with all applicable local laws, Verizon Wireless initially submitted the following documents to the City:

     a.   Completed Special Exception and Site Plan Review Application form;

     b.   Summary of applicable legal standards under the TCA;

     c.   Engineered zoning drawings;

     d.   Full Environmental Assessment Form pursuant to the New York State Environmental Quality Review Act ("SEQRA");

     e.   Radio Frequency Justification, including network propagation maps and related statements;

     f.   Pre-EME Report;

     g.   Passing Structural Analysis;

     h.   Visual Analysis;

     i.   Results of FAA Analysis; and

     j.   Check in the amount of $8,500 to cover the escrow deposit.

84.     Additional materials in support of the Application were submitted subsequently during the Planning Board's review, which documents will be submitted by Defendants as part of the official record of proceedings.

### B. FCC Shot Clock

85.     Recognizing that the original ninety (90) day Shot Clock Period would expire on November 18, 2020, and that the Planning Board would not be in a position to render a decision on the Application prior to the expiration of the shot clock, Verizon Wireless agreed, as a gesture of good will, to enter into a tolling agreement with Defendants. By letter dated October 28, 2020, countersigned by the Planning Board Chair on November 9, 2020, the Shot Clock Period was mutually tolled for an additional eighty-one (81) days (almost double the original ninety (90) applicable Shot Clock Period) through and including February 9, 2021. A true and correct copy of the October 28, 2020, tolling letter is annexed hereto as **Exhibit 3**.

86.     Subsequent to the initial shot clock tolling agreement and between January 2021 and May 2021, Verizon Wireless was asked to enter into three (3) additional shot clock tolling agreements. Even though Verizon Wireless did not believe that the requested tolling agreements were reasonable or necessary, as a continued show of good will, Verizon Wireless agreed to extend the Shot Clock Period as requested pursuant to agreements dated: (i) January 29, 2021; (ii) March 23, 2021; and (iii) May 11, 2021. A true and correct copy of the second, January 29, 2021, tolling letter is annexed hereto as **Exhibit 4**. A true and correct copy of the third, March 23, 2021, tolling letter is annexed hereto as **Exhibit 5**. The agreement to toll the Shot Clock Period through and including June 8, 2021 was made verbally at Defendant Planning Board's May 11, 2021 meeting.

87.     During its June 8, 2021 meeting, the Planning Board continued to refuse to render a decision on the Application and requested a further extension of the Shot Clock Period for an additional thirty (30) days.

88.     Verizon Wireless explained that due to the number of prior extensions of the Shot Clock Period, Verizon Wireless needed to consult its legal department at its headquarters before it could agree to a fifth extension.

89.     By electronic mail dated June 14, 2021, Verizon Wireless' attorney advised the attorney for the Planning Board that Verizon Wireless would not consent to a fifth extension of the Shot Clock Period. A true and correct copy of this June 14, 2021, correspondence is annexed hereto as **Exhibit 6.**

90.     During the approximately 300 days of Defendant Planning Board's consideration of the Application (more than three times the presumptive reasonable time for such consideration), it conducted no less than eight (8) public hearings, none of which were authorized by the Hudson City Code.

### C.  Defendant Planning Board Found that the Facility Serves a Public Need by Addressing a Significant Gap in Wireless Service and is the Least Intrusive Alternative

91.     The Application and supplemental supporting materials conclusively demonstrate that Verizon Wireless currently has significant gaps in service in the City of Hudson and is experiencing substantial network capacity issues.

92.     Defendant Planning Board's wireless consultant performed a comprehensive and independent review of all technical Application materials and concluded that the proposed Facility is necessary to remedy the identified gaps in service and capacity issues. A true and correct copy of the document entitled "Verizon Technical Memorandum" and dated June 16, 2021 is annexed hereto as **Exhibit 7.**

22

93.     In its June 23, 2021 Resolution, Defendant Planning Board made the following

findings in support of the Application and special use permit for the facility:

> "1. The applicant has demonstrated that there is a signal capacity and
> coverage issue within the City of Hudson and that the Project will
> remedy the gap.
> 2. The Project has been sited on the highest available priority location as
> set forth in Section 284-9 of the City Code and is consistent with the
> City's zoning regulations.  A publicly owned structure, which has a
> higher priority under the City Code, it not available for lease as the
> structure is proposed for demolition.
> 3. The Planning Board has reviewed alternate sites and has determined that
> the proposed Project site is the best available location.  The alternate
> sites would provide inferior service and leave service gaps, particularly
> for the high band 2100 MHz frequency, when compared to the proposed
> Project site.
> 4  The Project incorporates stealth technology to minimize adverse
> aesthetic and visual impacts on the land, property, buildings and other
> facilities adjacent to, surrounding, and in generally the same area as the
> proposed Project site.
> 5  The Project site is the most appropriate site as regards to being the least
> visually intrusive among those available in the City.  The Planning
> Board acknowledges that the Project may be visible from a number of
> surrounding properties, but finds that visibility in and of itself is not a
> significant adverse impact.  The Project has incorporated stealthing so
> that the proposed antennas and equipment will be located behind a
> fiberglass structures painted or treated to look like an extension of the
> brick building."

### D.  Defendants' Required Escrow

94.     Section 284-16(B) of the City Code purports to require an applicant to submit an

initial escrow deposit to the Defendant City to be used to reimburse costs incurred by consultants

retained by Defendant Planning Board to assist with the review of an application for a personal

wireless service facility.

95.     On or about August 24, 2020, Defendant Planning Board Chair Betsy Gramkow

sent an email to Verizon Wireless' counsel requesting submission of $10,000.00 (which

surprisingly exceeded the $8,500.00 amount set forth in section 284-16(B) of the City Code) to be

23

held in escrow pursuant to section 284-16(B) of the City Code. A true and correct copy of Chair Gramkow's August 24, 2020 E-Mail is annexed hereto as **Exhibit 8**.

96.     By letter dated August 31, 2020, counsel for Verizon Wireless submitted the $8,500.00 escrow payment while reserving the right to seek reimbursement from the City of any amounts deemed not reasonable or specifically authorized by law. A true and correct copy of Verizon Wireless' August 31, 2020 letter is annexed hereto as **Exhibit 9.**

97.     By email dated May 14, 2021, the Defendant Planning Board's attorney made a demand on Verizon Wireless to submit an additional ***$40,000.00*** in escrow to cover the existing and future costs of Defendant Planning Board's retained consultants, which amount is in addition to the previously provided $8,500.00 escrow. A true and correct copy of Defendant Planning Board Attorney Victoria Polidoro's email is annexed hereto as **Exhibit 10**.

98.     On June 3, 2021, Verizon Wireless submitted the amount demanded by the Planning Board subject to a reservation of its rights to challenge the escrow at a future date. A true and correct copy of Verizon Wireless Counsel's June 3, 2021 letter is annexed hereto as **Exhibit 11**. Planning Board representatives stated that failure to pay the demand would effectively terminate the review of the Application.

99.     Defendant Planning Board's demand of $40,000.00 was not accompanied by any documentation in support of the need for such payment, such as cost estimates for anticipated continued work or an accounting of the escrow account.

100.    At no point during the review of Application did Defendant Planning Board ever provide Verizon Wireless with cost estimates or scopes of service for the review of the Application by each consultant. Upon information and belief, no such cost estimates or scopes of service have

ever been prepared for the Application which serve to justify the amount purportedly required for the initial escrow deposit.

101.     Upon information and belief, the amount of required escrow contained in Section 284-16 of the City Code was not based on any reliable factual studies and statistics.

102.     The amount of escrow required by Defendant Planning Board to review the Application was also not based on any reliable statistics or studies to justify the anticipated costs of reviewing the Application.  Instead, Defendant Planning Board, upon information and belief, simply expected Verizon Wireless to pay all costs billed by Defendant Planning Board's consultants.

103.     Defendants failed to utilize an independent administrative review or accounting to review whether the invoices submitted by the Defendant Planning Board's consultants were reasonably necessary.

104.     For comparison, annexed hereto as **Exhibit 12** is a Stipulation and Order signed by Honorable David N. Hurd, U.S. District Court Judge in the *Matter of Upstate Cellular Network d/b/a Verizon Wireless v. Town of Brutus, New York, et al.*, in which it was "So Ordered" that the required escrow fee in connection with a collocation proposed by Verizon Wireless in the Town of Brutus shall be $2,000.00, which is in stark contrast to the $48,500.00 escrow required for the Application.

105.     Defendant City will likely require additional escrow in connection with the satisfaction of the conditions contained in the Resolution and additional review associated with the building permit application. This will ***further increase*** the already ***excessive escrow*** demanded by Defendants.

106. The excessive escrow demanded resulted, in part, due to Defendant Planning Board's failure to comply with the unambiguous requirements of Chapter 284 of the City Code, in particular, the provision that provides that a public hearing for the Application "shall not be required."

107. The: (i) review conducted, and (ii) amount of escrow demanded to date, by Defendant Planning Board in the amount of $48,500.00 is excessive and not reasonably necessary given the nature of the Application, which complies with the City Code's requirement to collocate on existing towers or structures and which proposes a Facility on Property deemed to be the highest available priority under the City Code. The fact that the Defendant Planning Board elected to hold a public hearing spanning a total of eight (8) separate dates and require its attorney and wireless consultant to attend each such hearing dates despite the fact that the City Code expressly states that public hearings for projects such as the Facility are not required, is proof that the expenses incurred by Defendant Planning Board's consultants were not reasonably necessary for the Application. Such expenses are, therefore, excessive, arbitrary and capricious and unlawful.

## VII.  STATUS OF APPLICATION FOR SPECIAL USE PERMIT

### A.  *Defendant Planning Board's June 23, 2021 Resolution*

108. On June 14, 2021, Verizon Wireless informed the Planning Board and its counsel that Verizon Wireless would not consent to any further tolling of the 90-day Shot Clock Period.

109. On June 22, 2021, the Planning Board met during a special meeting to continue its review of the Application. The meeting was adjourned without a determination by the Planning Board as to the Application.

110. On June 23, 2021, the Planning Board met again during a special meeting to consider the Application, at which the Planning Board, by a vote of five to two (5-2), adopted its

Resolution in which the Defendant Planning Board issued a Negative Declaration pursuant to the New York State Environmental Quality Review Act ("SEQRA") and granted the Special Use Permit for the Application subject to various conditions, several of which have no reasonable nexus to the Application and/or violate the City Code.

## B.  Resolution Conditions are Unenforceable and Unlawful

### (i)  Deed Restriction Condition

111.    Condition number 2 in the second "Be it Further Resolved" section of the Resolution requires "approval by the Planning Board Attorney of a deed restriction for the Property, committing to not letting other wireless providers locate on the 119 Columbia Street Property for a period of twenty years from the date of approval" ("Deed Restriction Condition").

112.    Prior to the Planning Board's June 23, 2021 meeting, Verizon Wireless informed Defendant Planning Board via email that the Property owner, although willing to agree to not allow additional carriers on the roof of the existing building, would not execute a deed restriction because doing so would unreasonably encumber title to the Property.  The email also outlined a list of objections to the Deed Restriction Condition.

113.    During its June 23, 2021 special meeting and in defense of the Deed Restriction Condition, certain members of Defendant Planning Board indicated that the Planning Board was always concerned with potential visual impacts of the Application. The Planning Board, however, failed to provide any rationale as to how the Deed Restriction Condition would mitigate potential visual effects of the Application.  When Verizon Wireless requested to discuss this issue, Defendant Planning Board refused to allow Verizon Wireless to express its concerns. Significantly, Defendant Planning Board did not discuss publicly any of the concerns raised in Verizon Wireless' June 23, 2021 email.

27

114.    The City's inclusion of this condition in the Resolution represents an effective denial of the Application and an effective prohibition of service in violation of the TCA. Verizon Wireless cannot obtain a building permit without having the "deed restriction" signed by the Property owner in a form approved by the Planning Board's attorney.  Knowing that the Property owner would not execute a deed restriction, the Planning Board's incorporation of such condition in its Resolution served to effectively sabotage the Application by undermining the special use permit and effectively prohibiting Verizon Wireless from providing service to this area of the City in violation of Section 332©(7)(B)(i)(II) of the TCA since Verizon Wireless has conclusively demonstrated that alternative locations are not available.

115.    The Deed Restriction Condition was imposed, in large part, in response to unsubstantiated fears of health concerns discussed at length by members of the Planning Board and public during the lengthy public hearing process in violation of Section 332©(7)(B)(iv).

116.    There is no reasonable nexus between the Deed Restriction Condition and the proposed use described in the Application. As demonstrated by the Defendant Planning Board's Resolution, all potential adverse impacts associated with the Application have been mitigated to the maximum extent practicable. The required deed restriction is not intended to mitigate any impacts *associated with this Application*, nor does the Resolution provide a rationale for why the deed restriction is allegedly warranted. By its terms, *the Deed Restriction Condition applies to prospective future applications* of other licensed carriers, *not Verizon Wireless or its Application.* Having no reasonable nexus to the Application, the Deed Restriction Condition is unlawful and unenforceable.

117.    The Deed Restriction Condition is not legally sufficient to prevent the Defendant Planning Board from refusing to consider or denying a subsequent application for a new personal wireless service facility.

118.    The photographic simulations prepared for the stealth concealment alternative included in **Exhibit 13** clearly demonstrate that the proposed Facility would not result in significant adverse visual impacts. The Deed Restriction Condition is, therefore, not necessary to mitigate any potential impact of the Application especially considering that such condition by its very terms has absolutely nothing to do with Verizon Wireless' Application and everything to do with a potential future application that may or may not ever be submitted.

119.    The Deed Restriction Condition was never discussed during the extensive public hearing process. The first time it came up was at the June 23, 2021 special Planning Board meeting.

120.    The Deed Restriction Condition also violates various provisions of the City of Hudson Code, including those sections of the Code that require applicants to collocate antennas on existing buildings or structures rather than construct new structures. This deed restriction would also have the effect of eliminating the Property and the building located thereon (which is considered a preferred siting location per section 284-9 of the Hudson City Code) from the possibility of future collocations, thereby potentially requiring a future new tower by another carrier instead of preferred collocation.

121.    The Deed Restriction Condition is an *ultra vires* act by Defendant Planning Board that if given effect would serve to modify certain provisions of Chapter 284 of the City Code related to existing siting priorities and the City's preference for collocation. Defendant Planning Board does not possess such quasi-legislative jurisdiction and its attempt to impose the Deed Restriction Condition is a blatant overreach of its authority.  By purporting to prohibit any

29

additional or expanded wireless telecommunications facilities at the Property, other than Verizon Wireless', the City has deprived the Landlord of the potential value of these additional wireless facilities resulting in an unconstitutional taking without just compensation in violation of the Fifth Amendment of the United States Constitution.

122.    The Deed Restriction Condition directly contradicts section 6409 of the Middle-Class Job Creation and Tax Relief Act of 2012 (the, "Spectrum Act"). One of the primary purposes of the Spectrum Act is to promote and encourage the deployment of personal wireless service facilities by requiring states and local municipalities to promptly review and approve collocation applications that meet the requirements set forth therein. Defendant Planning Board lacks the authority and jurisdiction to act in a manner that violates the Spectrum Act.

123.    The Deed Restriction Condition has no direct relationship to the Application and is, therefore, unlawful, arbitrary and capricious, and unenforceable.

*(ii)  Defendant Planning Board's Regulation of Frequencies is Preempted by the FCC*

124.    Defendant Planning Board's Resolution includes a condition that prohibits Verizon Wireless from using certain frequencies licensed by the FCC.

125.    Defendant Planning Board's purported attempt to regulate the radio frequencies which Verizon Wireless may use at the Property was based solely on perceived health concerns raised by certain members of the public and is a clear violation of section 332©(7)(B)(iv) of the TCA.  No other legitimate rationale exists for such condition.

126.    Although the Resolution does not specifically mention perceived health concerns, a substantial portion of the public hearing was dominated by discussions among certain neighbors and Planning Board members concerning this issue. For example, as recently as June 23, 2021, the

date Defendant Planning Board adopted the Resolution, certain members of the Planning Board made statements that they believe that the proposed Facility will result in adverse health impacts.

127.    Regulation of wireless commercial service, including radio frequencies used for such service, is the sole jurisdiction of the FCC.

128.    State and local municipalities, while retaining the right to regulate the placement, construction and modification of personal wireless service facilities do not have the jurisdiction to regulate the use of specific wireless services frequencies.

129.    Defendant Planning Board's unlawful attempt to regulate or limit the specific frequencies utilized by Verizon Wireless violates the Supremacy Clause of the United States Constitution by unlawfully interfering with the established goals of the Federal government related to the deployment of next generation wireless service and infrastructure and attempting to regulate the use of radio frequencies which is under the exclusive jurisdiction of the FCC.

### *(iii)  Insurance Certificate Condition*

130.    Defendant Planning Board's Resolution includes a condition that expressly requires Verizon Wireless to provide a certificate of insurance naming the City as an additional insured "meeting the requirements of Section 284-23 of the City Code…."

131.    Section 284-23(B) of the City Code requires an applicant to furnish the City with an insurance certificate only if the property in question is City-owned property. This section specifically provides:

> "[F]or a wireless telecommunications facility on City property, the Commercial genera liability insurance policy shall specifically include the City and its Officers, council, employees, committee members, attorneys, agents and consultants as additional insureds."

132.    Because the Property is not City owned, Defendant Planning Board's condition to require an insurance certificate is an express violation of the City Code and is unlawful, arbitrary and capricious, and unenforceable.

### VIII.    IRREPARABLE INJURY, PUBLIC INTEREST, AND BALANCE OF HARDSHIPS

133.    As a result of the Defendants' actions, Verizon Wireless has been, and will continue to be, damaged and irreparably harmed absent the relief requested.

134.    The harm caused by Defendants' unlawful actions includes, but is not limited to, an effective prohibition on the Verizon Wireless' ability to provide personal wireless service in the Gap Area of the City, and impairment of Verizon Wireless': (a) ability to provide the public in the City with adequate and reliable service; (b) ability to compete with other providers of telecommunication services; (c) full use of its existing licenses and business investments; and (d) good will and business reputation.

135.    The harm that Verizon Wireless has suffered and is suffering from the Defendants' actions is not reasonably susceptible to accurate calculation and cannot be fully and adequately addressed through an award of damages.

136.    Moreover, the public interest in promoting competition in the telecommunications arena and the prompt deployment of services—the express goals of the TCA — has been irreparably harmed and will continue to be irreparably harmed by Defendants' unlawful actions. Verizon Wireless's present and future customers, the public at large and emergency service providers are significantly prejudiced by the Defendants' unlawful conduct.

137.    In addition, wireless telecommunications are an important component of public safety and emergency response systems and provide a vital alternative to traditional land lines during times of public crisis.  By delaying and preventing Verizon Wireless from installing

32

equipment needed to provide adequate service, the Defendants' unlawful actions are causing irreparable harm to the public interest in deprivation of reliable emergency communications.

138.   Verizon Wireless' original Application for approval of the Facility to remedy service in the Gap Area and capacity issues was pending since August 20, 2020, a period of approximately ten (10) months.  The continued delay in providing all necessary authorizations to install the Facility is causing irreparable harm to Verizon Wireless and the public interest.  This lengthy delay violates the TCA.

139.   In contrast to the immediate and irreparable injury being suffered by Verizon Wireless, its customers, and the public interest, the Defendants will not suffer any significant injury if the Court issues the requested injunction.  Verizon Wireless has met all of the requirements for the land use approvals it seeks under controlling State and Federal law, including the applicable public utility variance standard.

## IX.  ALLEGATIONS SUPPORTING DECLARATORY RELIEF

140.   At present, an actual controversy has arisen and now exists between the parties regarding their respective legal rights and duties.  Verizon Wireless contends that the Defendants' actions are in violation of the TCA and New York State law, and that Verizon Wireless is entitled to all of the approvals necessary to proceed with the Facility.

141.   Verizon Wireless—and the public—have been and will continue to be adversely affected by the Defendants' unlawful acts and any further delay in approval and construction of the project.

142.   Accordingly, declaratory relief is appropriate and necessary to adjudicate the extent of Verizon Wireless' rights and Defendants' duties and authority.

## COUNT I

### UNLAWFUL PROHIBITION ON THE PROVISION OF PERSONAL WIRELESS SERVICES IN VIOLATION OF THE TCA, 47 U.S.C. §332(c)(7)(B)(i)(II)

143.    Plaintiff repeats and realleges each and every allegation above with the same force and effect as if set forth in full herein.

144.    The TCA provides, in relevant part, that "[t]he regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof…shall not prohibit or have the effect of prohibiting the provision of personal wireless services."  47 U.S.C. §332(c)(7)(B)(i)(II).

145.    The Facility is a "personal wireless service facilit[y]" providing "personal wireless services" within the meaning of the TCA.

146.    A prohibition on the provision of personal wireless services occurs within the meaning of the TCA when a carrier is denied the right to install a personal wireless service facility even though it has demonstrated that there is a significant gap in a wireless carrier's service and the proposed Facility is the least intrusive means to fill that gap. Gaps in service are just one indicator of an effective prohibition of service in violation of federal law.  *See In the Matter of Accelerating Wireless Broadband Deployment by Removing Barriers to Infrastructure Inv*., 33 F.C.C.R 9088, 9104 (2018).

147.    The record shows that Verizon Wireless has a significant gap in service in the City of Hudson.

148.    The record demonstrates that Verizon Wireless' local network is also experiencing substantial capacity issues that require a remedy.

149.    The record further demonstrates that the proposed Facility would be substantially concealed by RF transparent concealment structures designed to match the existing exterior facade.

150.     Incorporation of the substantial design elements into the Facility and the visual mitigation resulting therefrom (illustrated in **Exhibit 13**) was conclusively demonstrated via a professionally prepared Visual Resource Evaluation, including photographic simulations of such design.

151.     Verizon Wireless' Application fulfills all of the criteria and requirements for approval of the Facility under the City's Code and New York State law.

152.     The Defendants' unsupported and legally unsustainable imposition of unlawful conditions, including the Deed Restriction Condition – with which compliance cannot be obtained – has had, and will have, the continued effect of prohibiting Verizon Wireless from providing wireless services pursuant to its FCC licenses in violation of 47 U.S.C. §332(c)(7)(B)(i)(II).

153.     Defendants continuing failure to grant "all necessary authorizations" for the Facility to proceed in violation of 47 U.S.C. §332(c)(7)(B), the 2009 FCC Order, the 2014 FCC Order, and the 2018 FCC Order has had, and will have a continuing effect of prohibiting Verizon Wireless from providing wireless services pursuant to its FCC licenses.

154.     Verizon Wireless has suffered and will continue to suffer irreparable injury as a result of Defendants' violation of the TCA.

## COUNT II

## VIOLATION OF THE SUPREMACY CLAUSE OF THE UNITED STATES CONSITUTION

155.     Plaintiff repeats and realleges each and every allegation above with the same force and effect as if set forth in full herein.

156.     Under the Supremacy Clause of the United States Constitution, a state or local municipal law, rule, tariff or action is preempted when Congress intends federal law to

occupy the filed into which the state or local municipality intrudes or when such local action stands as an obstacle to the accomplishment of Congress' goals.

157.     The TCA has carved out limited jurisdiction to state and local municipalities to regulate the placement, construction and modification of personal wireless service facilities.

158.     State and local municipalities lack the jurisdiction to regulate the types of frequencies utilized to operate personal wireless service facilities. This jurisdiction lies exclusively with the FCC.

159.     The 2018 FCC Order, *inter alia*, takes important steps to remove regulatory barriers that unlawfully inhibit deployment of 5G next generation infrastructure.

160.     Defendant Planning Board's condition purporting to limit the specific frequencies permitted to be used by Verizon Wireless unlawfully interferes with the established goal of promoting the development of next generation infrastructure and the associated benefits of such technology.

161.     Defendants are preempted from regulating the operating radio frequencies of the Verizon Wireless Facility and any and all conditions in the Resolution which attempt to regulate such field must be deemed null and void.

162.     Defendants purported attempt to regulate the specific frequencies Verizon Wireless may use is a violation of the Supremacy Act of the United States Constitution.

## COUNT III

## LACK OF SUBSTANTIAL EVIDENCE TO SUPPORT DECISION IN VIOLATION OF 47 U.S.C. §332(c)(7)(B)(iii)

163.     Plaintiff repeats and realleges each and every allegation above with the same force and effect as if set forth in full herein.

164.    Section 332(c)(7)(B)(iii) of the TCA provides that "[a]ny decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in the written record."

165.    By incorporating a poison pill condition into its Resolution in the form of the Deed Restriction Condition, Defendant Planning Board effectively denied the Application.

166.    The record is devoid of any evidence, substantial or otherwise, to support the need for the Deed Restriction Condition.  There is no nexus between this condition and the Application.

167.    Defendant Planning Board's attempt to regulate the frequencies allowed to be used is a clear violation of the Supremacy Clause of the United States Constitution. The record is devoid of any evidence to support such a condition.

168.    Defendant Planning Board violated section 332(c)(7)(B)(iii) of the TCA by imposing certain conditions that are not supported by any evidence and which serve to effectively deny the Application.

## COUNT IV

### UNREASONABLE DELAY AND FAILURE TO ACT ON THE VERIZON WIRELESS APPLICATION IS A VIOLATION OF 47 U.S.C. §332(c)(7)(B), THE 2009 FCC ORDER, THE 2014 FCC ORDER AND THE 2018 FCC ORDER

169.    Plaintiff repeats and realleges each and every allegation above with the same force and effect as if set forth in full herein.

170.    47 U.S.C. § 332(c)(7)(B)(ii) states, "[a] state or local government or instrumentality thereof shall act on any request for authorization to place, construct, or modify personal wireless service facilities within a reasonable period of time after the request is duly filed with such government or instrumentality, taking into account the nature and scope of such request."

171.     The 2009 FCC Order declares that if a local government, such as Defendants here, do not act upon an application within the shot clock period, "then a 'failure to act' has occurred" and personal wireless service providers, like Verizon Wireless, may seek judicial redress pursuant to 47 U.S.C. § 332(c)(7)(B)(v). *See* 2009 FCC Order at ¶ 49; 2014 FCC Order at ¶ 265.

172.     The Application constitutes a request for the placement of personal wireless services facility and, as such, Verizon Wireless is entitled to the benefits and protections of the TCA, the 2009 FCC Order, the 2014 FCC Order, and the 2018 FCC Order with respect to such Application.

173.     The Application has been pending for far more than the requisite 90 days, and the Defendants failed to render a decision on it within the <u>required</u> timeframe.

174.     Verizon Wireless comprehensively demonstrated that it is entitled to all authorizations necessary for the deployment of Verizon Wireless' Personal Wireless Service Facility.

175.     Defendant City's failure to grant all necessary authorizations, including a building permit, constitute a continuing violation of the TCA and the 2009 FCC Order, the 2014 FCC Order and the 2018 FCC Order.

176.     Defendants' acts and omissions described herein have delayed and prevented Verizon Wireless from securing the necessary approvals to construct the Facility and fill a significant gap in service and address capacity deficiencies and such delay will continue until the City issues a Building Permit for the Personal Wireless Service Facility.

177.     By its acts and omissions, the Defendants have violated 47 U.S.C. §332(c)(7)(B)(ii) as authoritatively interpreted by the 2009 FCC Order, 2014 FCC Order and 2018 FCC Order.

178.     Defendants' continued failure to grant all necessary authorizations for the Facility have and continue to violate effective prohibition provisions of 47 U.C.C. §332(c)(7)(B)(i)(II).

## COUNT V

## ARTICLE 78 OF THE NEW YORK CIVIL PRACTICE LAW AND RULES

179.     Plaintiff repeats and realleges each and every allegation above with the same force and effect as if set forth in full herein.

180.     Article 78 of the New York Civil Practice Law and Rules ("CPLR") provides a device for challenging the official acts of State and local officials, including the Defendants herein.

181.     CPLR §7803 provides a right of action against a government body or officer where a question is raised as to (i) whether officials or a government body "failed to perform a duty enjoined upon it by law"; (ii) whether it has "proceeded, is proceeding or is about to proceed without or in excess of jurisdiction", (iii) whether "a determination was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion.."; or (iv) whether "a determination made as a result of a hearing held, and at which evidence was taken, pursuant to direction by law is, on the entire record, supported by substantial evidence."

182.     Defendants' determination to impose certain conditions to the approval of the Application was not supported by substantial evidence in the record, was arbitrary and capricious, was an abuse of discretion, and was affected by an error of law.

183.     Defendant Planning Board's Deed Restriction Condition: (i) lacks a reasonable nexus to the use described in the Application; (ii) is inconsistent with certain provisions of the City Code regarding siting location and design performances; (ii) represents an unauthorized quasi-legislative act that serves to attempt to invalidate certain provisions of the City Code which was

enacted by the City of Hudson Board of Trustees; (iv) would create an unenforceable condition that could not be used to deny a potential future application for a subsequent colocation; and (v) serves to frustrate and unlawfully interfere with the Spectrum Act.

184.     Defendant Planning Board lacks the legal authority and jurisdiction to impose a condition prohibiting potential "5G" next generation service at the Property.  The FCC retains sole jurisdiction to regulate commercial wireless broadcasts and the Defendant City is pre-empted from this field.

185.     Defendant Planning Board's condition which requires Verizon Wireless to provide a certificate of insurance expressly contradicted by § 284-23(B) of the City Code.

## COUNT VI

## DEFENDANT CITY'S ESCROW REQUIREMENT UNLAWFULL AND EXCESSIVE

186.     Plaintiff repeats and realleges each and every allegation above with the same force and effect as if set forth in full herein.

187.     In response to demands by Defendant Planning Board, Verizon Wireless has paid $48,500.00 in escrow which is intended to be used to reimburse the consultants retained to assist the Defendant Planning Board with the review of the Application.

188.     Defendant Planning Board has failed to provide a proper accounting of the escrow account for the Application.

189.     Section 284-16 of the City Code which purports to require an applicant to remit certain fees to be held in escrow to pay the consultants retained to review the Application establishes an open-ended and unlimited obligation on behalf of applicants to pay the costs billed by the consultants uncontrolled by any specific standards in Chapter 284 of the City Code.

190.     Upon information and belief, the open-ended fees required by section 284-16 of the City Code are not reasonably necessary to the accomplishment of any specific regulatory program and, therefore, the fees are unlawful.

191.     The fees set forth in section 284-16 of the City Code are not based on factual studies or statistics as required under New York Law.

192.     The excessive fees required to date by Defendant City are oppressive and have the effect of discouraging applicants from seeking relief under the applicable zoning ordinance.

193.     Based on the foregoing, the fees required by section 284-16 and the Defendant Planning Board totaling $48,500 are excessive, arbitrary and capricious and unlawful.

194.     Plaintiffs have suffered injury as a result of Defendants' actions, and timely commenced this action.

**WHEREFORE**, Plaintiff Verizon Wireless respectfully request that this Court issue an Order and Judgment:

a.  Annulling the Resolution in its entirety;

b.  Declaring and adjudging that Defendants have unreasonably delayed and failed to act on the Application in violation of 47 U.S.C. § 332(c)(7)(B)(ii), the 2009 FCC Order, the 2014 FCC Order, and the 2018 FCC Order.

c.  Declaring that Defendants' imposition of certain conditions in its Resolution prohibits, or has the effect of prohibiting, the provision of wireless service in violation of 47 U.S.C. §332(c)(7)(B)(i)(II);

d.  Declaring that the Defendants are federally preempted from regulating the technological and operational standards of wireless carriers and are, therefore, preempted from regulating the frequencies permitted to be used, including the potential future use of "5G" technology;

e.  Declaring that Defendants imposition of certain conditions in its Resolution, which result in an effective denial of the Application are not supported by substantial evidence in violation of 47 U.S.C. S 332(c)(7)(B)(iii);

f.  Declaring that the Defendants are in violation of Federal and New York State law;

g.  Declaring that the Defendants' Resolution and, specifically, certain conditions therein, was affected by an error of law, was arbitrary and capricious and an abuse of discretion, and was not supported by substantial evidence based on the entire record;

h.  Ordering and directing the Defendants to immediately issue all local approvals and permits necessary to allow construction and operation of the Facility, including

(without limitation) all building permits, site plan approvals, special use permits, and variances without any unlawful or unenforceable conditions;

i.     Declaring that section 284-16 of the City Code is void and of no effect;

j.     Ordering and directing the Defendants to return all escrow monies paid to date to Verizon Wireless;

k.     Awarding Verizon Wireless the costs, disbursements, and expenses of this action, including reasonable attorneys' fees; and

l.     Granting such other and further relief as this Court deems just and proper.

DATED:  July 7, 2021

YOUNG / SOMMER, LLC

By:     _____

Scott P. Olson
Bar Roll No. 507030
William A. Hurst
Bar Roll No. 510271
*Attorneys for Plaintiff Bell Atlantic Mobile Systems, LLC d/b/a Verizon Wireless*
5 Palisades Dr., Suite 300
Albany, New York 12205
Tel.: (518) 438-9907
Fax: (518) 438 9914
Email: solson@youngsommer.com
       whurst@youngsommer.com